# United States Court of Appeals
## For the First Circuit

No. 00-2493

UNITED STATES,

Appellee,

v.

BEVIL CAMPBELL, A/K/A WHOOPY, A/K/A WHOPS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Paul J. Haley for appellant.
John Wortmann, Assistant United States Attorney, with whom Jennifer Hay Zacks, Assistant United States Attorney, and Donald K. Stern, United States Attorney, were on brief for appellee.

October 11, 2001

**STAHL, Senior Circuit Judge**. In this appeal, defendant Bevin Campbell challenges his convictions and sentence for conspiracy to import a controlled substance, 21 U.S.C. § 963; aiding and abetting the importation of a controlled substance, 21 U.S.C. § 952(a); and conspiracy to possess a controlled substance with intent to distribute, 21 U.S.C. § 846. Specifically, the defendant appeals from the decision of the district court to admit out-of-court statements made by his alleged coconspirators. In addition to these purportedly incorrect evidentiary rulings, the defendant claims that the district court erred when it denied his motion for a judgment of acquittal and/or his motion for a new trial, because, defendant maintains, the government failed to prove that he was part of a conspiracy to import and distribute cocaine. Defendant also alleges that his counsel was constitutionally ineffective as an additional justification for a new trial. Finally, defendant argues that, if his convictions are affirmed, his case should be returned for resentencing, claiming that his sentence violates the constitutional rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000). As none of defendant's arguments have merit, his convictions and sentence are affirmed.

**I.**

-3-

On November 15, 1998, at approximately 8:30 p.m., Noiyota Swinson and Ann DePolo arrived at Logan Airport on a flight originating in Jamaica. Customs officials observed Swinson place two pieces of checked luggage on DePolo's luggage cart, and became suspicious when the two women then went in separate directions. When individually interrogated, Swinson and DePolo initially denied traveling together. The customs agents then opened the women's luggage, revealing 17 shampoo bottles containing more than 3.2 kilograms of cocaine. Upon further interrogation, Swinson and DePolo separately stated that they were planning to meet a black man known as "Whoopy" in a black Lexus or BMW outside the international terminal. Swinson had a piece of paper with a phone number in her possession at the time of her apprehension.

When customs officials went outside the terminal, they observed Campbell, a black male, in a black BMW. Campbell, at the request of the customs officials, accompanied them into the international arrivals building. He stated that he was there to meet a friend, who was purportedly arriving on an 8:30 flight, outside the KLM ticket counter. The customs officials soon ascertained that there was no such incoming flight. When told that he was possibly implicated in a seizure of drugs from two women who had just arrived from Jamaica, Campbell denied knowing

-4-

the women.  But while he was being interviewed, the door to one of the search rooms opened and Swinson and DePolo positively identified the defendant as "Whoopy" and as the person who had provided them with the shampoo bottles and their tickets to and from Jamaica.  An interrogating agent asked Campbell for his pager number, which matched the number on the piece of paper in Swinson's possession.  In addition, although Campbell denied going by the name "Whoopy," he had a note in his possession addressed to "Whops."

Although Campbell was not detained at the airport, a grand jury subsequently returned a superseding indictment, charging him with the three counts on which, after a seven-day trial, he was ultimately convicted to 121 months' imprisonment, to be served concurrently, followed by 48 months' supervised release.  The defendant appealed both his convictions and his sentence.

## II.

Campbell maintains that the district court improperly allowed the jury to consider statements made by unindicted coconspirators who were unavailable to testify at trial. Pursuant to Fed. R. Evid. 801(d)(2)(E), a "statement [made] by a coconspirator of a party during the course and in furtherance of the conspiracy" is not considered hearsay, and may be

considered by the jury for the truth of the matter asserted. Because of concerns about the reliability of these statements, however, the Supreme Court in Bourjaily v. United States, 483 U.S. 171 (1987), announced that, prior to admitting a coconspirator statement over an objection, "a court must be satisfied that the statement actually falls within the definition of the Rule," meaning that "[t]here must be evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made 'during the course and in furtherance of the conspiracy.'" Id. at 175. The party wishing to offer these statements to the jury must first demonstrate by a preponderance of the evidence that the statements fall within the purview of the Rule. See id. at 176; see also id. at 175 (noting that "preliminary questions concerning the admissibility of evidence shall be determined by the court," and the existence of a conspiracy is one such preliminary question) (quoting Fed. R. Evid. 104(a)). District courts in this circuit, guided by United States v. Petrozziello, 548 F.2d 20 (1st Cir. 1977), which was decided prior to, but consistently with the Supreme Court's pronouncement in Bourjaily, make these preliminary gate-keeping determinations regarding the admissibility of coconspirator statements during so-called Petrozziello hearings.

Because the defendant failed to object to the district court's ultimate determination that the statements were, in fact, declarations by a coconspirator, we review the district court's decision for clear error. See United States v. Mojica-Baez, 229 F.3d 292, 303 (1st Cir. 2000). During Swinson's testimony, but prior to the issue being raised formally by the defendant, the trial judge explained to counsel at a sidebar conference how he would proceed in deciding any questions regarding coconspirator statements:

> Now, at this point, my attention has not been called, I believe to any coconspirator statement that will make it necessary for me to have such a hearing. I don't know whether it will or not, but in any event, on the basis of the evidence I have heard thus far, the proffer suggested in the government's opening statement, it appears to me very likely, most probable, that if I hold a Petrozziello hearing, it will support findings by a preponderance of the evidence which is a standard I am supposed to use in making the findings of conspiracy. So unless you can call my attention to some particular problem that I am not aware of, I think the appropriate thing for me to do is to receive in this evidence over objection at this point.

See Trans. Vol. 2 (Afternoon) at 28. As demonstrated by this excerpt from the transcript, the trial judge correctly anticipated this issue and demonstrated his awareness of the appropriate legal standard for making his determination.

-7-

When Swinson began to recount for the jury the statements made to her by "Corey," an alleged coconspirator with the defendant,[1] the government made the following proffer in response to defendant's objection:

> Respectfully, this statement is being offered as a coconspirator declaration under Federal Rules of Evidence 801(d)(2)(E), Corey is a coconspirator, and the Court has already heard testimony that Corey instructed the girls at Wollaston Beach they were bringing back flav in conjunction with Whoppy [sic], and we would submit that this is a probative statement. It is being offered for the truth of the matter asserted as a coconspirator declaration.

Id. at 78. At that point, the trial court announced that it had "already heard enough to have a view that it is more likely than not after I have heard all the evidence and hold a Petrozziello hearing, that I will make findings that this is admissible as that [sic] coconspirator statement . . . ." Id. Consequently, the judge lifted the limiting instruction that he had previously

---

[1]    During the trial, the government incorrectly stated that Corey was an indicted coconspirator, see Trans. Vol. 2 (afternoon) at 78, when, in fact, he was an *unindicted* coconspirator. See Appellee's Brief at 9 n.5. Nevertheless, this misstatement by counsel for the government is irrelevant to our analysis, as Rule 801 makes no distinction between indicted and unindicted coconspirators. See, e.g., United States v. Ziperstein, 601 F.2d 281, 294 (7th Cir. 1979) ("[I]t is well established that co-conspirators need not be indicted, and *a fortiori* need not be named, for the [Rule 801] exception to be applicable.").

given to the jury regarding the consideration of this testimony. When Swinson testified regarding statements made by "Carl," "Dred," and "Culture," who were also alleged conspiracy participants residing in Jamaica, the defendant renewed his objection and again requested a limiting instruction.  The trial court, however, accepted the government's argument that these statements were also covered by Rule 801(d)(2)(E), and told counsel, "[If] you see a problem that I have not ruled on, you may let me know."  See Trans. Vol. 3 at 20.  Upon the conclusion of the evidence, and after charging the jury, the trial judge reiterated his decision to admit the coconspirator testimony without limitation, and confirmed with counsel that a formal Petrozziello hearing would not be necessary.[2]

As explained in United States v. Ortiz, 966 F.2d 707 (1st Cir. 1992), the jurisprudence of our circuit requires that the district court make its Petrozziello determination "at the

---

[2] THE COURT: All right, now, one other thing that I want to call attention to is that I explicitly have decided not to give any modification of instructions on my evidentiary rulings during the course of the trial, and no one has requested such modifications, and in those circumstances a Petrozziello hearing is not required.  I just wanted to be sure that everybody understood that.

MR. FAHEY (DEFENSE COUNSEL): That's correct, your Honor.

Trans. Vol. 7 at 112.

close of all the evidence." <u>Id.</u> at 715 (quoting <u>United States</u> v. <u>Ciampaglia</u>, 628 F.2d 632, 638 (1st Cir.), <u>cert. denied</u>, 449 U.S. 1038 (1980)). However, in <u>Ortiz</u>, we also made clear that a "defendant's failure to object to the omission of such an express trial-end determination bars him from raising the point on appeal in the absence of plain error." <u>Id.</u> (quoting <u>United States</u> v. <u>Perkins</u>, 926 F.2d 1271, 1283 (1st Cir. 1991)).

Here, the trial judge made his provisional determination regarding admissibility early on during the trial, and reaffirmed his holding upon the conclusion of evidence. Nevertheless, he did offer counsel the opportunity to request a formal <u>Petrozziello</u> hearing. In light of counsel's failure to accept the Court's invitation, the defendant waived this objection. Even if we assume *arguendo* that the defendant did not waive this issue, we find no error, plain or otherwise, in the lower court's decision to admit the coconspirator statements. Although the defendant correctly notes that a trial judge may not rely solely on coconspirator statements to establish the existence of a conspiracy, <u>see</u> <u>United States</u> v. <u>Sepulveda</u>, 15 F.3d 1161, 1182 (1st Cir. 1993), here the court had before it ample extrinsic evidence demonstrating that a conspiracy existed. There was, *inter alia*, testimony that the defendant had been in the vehicle with Corey, Swinson and Avery

-10-

Fortes,[3] and, while they were driving around, had instructed Corey to tell the two women why they were getting a free trip to Jamaica. The defendant also drove the two drug couriers (Swinson and DePolo) to the airport, gave them the shampoo bottles that they subsequently used to transport the drugs, purchased their tickets for them through his friend Gregg Bush, told the two women not to be seen together while traveling so as not to arouse suspicion, and told Swinson to braid her hair so that she would look more like a tourist. Along with the acts and statements of the defendant himself, the government offered evidence linking the defendant with his alleged coconspirators in the drug scheme.[4] The district court did not commit error, plain or otherwise, when it ruled that the government had demonstrated the existence of a conspiracy by a preponderance of the evidence and allowed the jury to consider the statements of unindicted coconspirators without a limiting instruction.

---

[3] Avery Fortes was originally offered the "opportunity" to go to Jamaica, but chose not to go. Swinson invited DePolo to take Fortes' place.

[4] For example, there was testimony that "Carl" and "Dred" picked Swinson and DePolo up at the airport in Jamaica and brought them to their hotel. Furthermore, the government presented documentary evidence of defendant's phone records, revealing numerous calls made to Jamaica during the time that the drug transactions were consummated; part of an envelope with "Carl's" phone number on it, which had been in DePolo's possession at the time of her arrest; and Swinson's calendar, which included the notation, "Wait for Carl."

The defendant argues next that the trial court erred in denying his motion for acquittal and/or motion for new trial filed pursuant to Fed. R. Crim. P. 29 and 33, because, defendant maintains, there was no evidence linking him to the conspiracy charged. The denial of a Rule 29 motion for judgment of acquittal is reviewed *de novo* to determine "whether any rational factfinder could have found that the evidence presented at trial, together with all reasonable inferences, viewed in the light most favorable to the government, established each element of the particular offense beyond a reasonable doubt." United States v. Richard, 234 F.3d 763, 767 (1st Cir. 2000) (quoting United States v. Gabriele, 63 F.3d 61, 67 (1st Cir. 1995)). The denial of a motion for a new trial, on the other hand, is reviewed for abuse of discretion, provided that the motion is not based on grounds arising subsequent to trial or due to an alleged error in the legal standard applied, neither of which applies here. See United States v. Freeman, 208 F.3d 332, 339 & n.6 (1st Cir. 2000).

In addition to the properly admitted coconspirator statements and the testimony of Fortes, Swinson and DePolo, the government offered substantial testimonial and documentary evidence, discussed *supra*, linking the defendant to, and

suggesting that he was, in fact, the leader of the conspiracy to import and to distribute cocaine. The fact that Swinson and DePolo may have been under the mistaken impression that they were being asked to transport marijuana rather than cocaine into the United States is irrelevant because, based on the evidence presented, a rational factfinder could conclude that the defendant and his American and Jamaican (unindicted) coconspirators were of one mind in conspiring to import and distribute cocaine.[5] With the exception of his claim of ineffective assistance, which is discussed *infra*, the defendant has failed to offer any additional argument or evidence to support his claim that the trial judge abused his discretion in failing to grant a new trial. The decision of the trial court denying both the motion for judgment of acquittal and the motion for a new trial is hereby affirmed.

**IV.**

Finally, the defendant suggests two additional grounds of error. Defendant first argues that he is entitled to a new trial because his counsel's performance was constitutionally deficient. Second, the defendant maintains that his sentence must be vacated in light of the Supreme Court's pronouncement in

---

[5] The trial testimony of Fortes suggests that, in certain communities, "flav" is commonly understood as a slang term for cocaine. See Trans. Vol. 2 (morning) at 86.

<u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000).  We dispose of these arguments summarily, as the former issue has been raised prematurely and the latter is without merit.

**A.**

In raising a claim of ineffective assistance of counsel, the defendant alleges that his trial counsel (1) failed to question two witnesses on their prior testimony regarding their knowledge of the conspiracy; (2) failed to raise the issue of racial profiling; (3) failed to call defense witnesses; (4) failed to argue the absence of proof of a conspiracy in the Rule 29 motion; and (5) failed to request a charge relating to the perjury of a witness.  However, "[t]he rule in this circuit is that a fact-specific claim of ineffective legal assistance cannot be raised initially on direct review of a criminal conviction, but must originally be presented to the district court." <u>United States</u> v. <u>Hunnewell</u>, 891 F.2d 955, 956 (1st Cir. 1989).  In order for the defendant's claim to be considered fully, he must first build a record in district court cataloguing his complaints regarding his counsel's allegedly faulty strategic choices and general performance.  Therefore, any consideration of defendant's ineffective assistance claim by this Court is premature. <u>See also</u> <u>United States</u> v. <u>Natanel</u>, 938

F.2d 302, 309 (1st Cir. 1991) ("We do not normally consider ineffective-assistance-of-counsel claims on direct appeal.").

**B.**

The defendant also alleges that the trial judge ran afoul of Apprendi v. New Jersey when determining the applicable penalty range under the Sentencing Guidelines, because he calculated the sentence based on the amount of drugs involved in the offense, even though a specific drug quantity had not been included in the indictment.[6] As this Court has held on numerous occasions, "[n]o Apprendi violation occurs when the district court sentences a defendant below the default statutory maximum." United States v. Barnes, 244 F.3d 172, 177-78 (1st Cir. 2001); see also United States v. Robinson, 241 F.3d 115, 119 (1st Cir. 2001).[7] The trial judge sentenced the defendant to 121 months, which falls below the statutory maximum of 240 months provided by the catch-all provision of the controlled

---

[6] The defendant only disputes the propriety of his term of incarceration. He did not raise any challenge to his term of supervised release either at sentencing or in his appellate brief.

[7] It is unclear whether the Supreme Court contemplated the impact of its decision in Apprendi on the calculation of sentencing guidelines ranges generally, and drug violation guideline ranges in particular, where drug quantity is one of the most important variables in determining where a guideline range will fall. Nevertheless, until the Supreme Court offers us additional guidance, First Circuit jurisprudence on this point has been well-established.

-15-

substances statute for offenses involving cocaine, 21 U.S.C. § 841(b)(1)(C). Therefore, no <u>Apprendi</u> violation has occurred, and the defendant's sentence is affirmed.

**V.**

For all of the foregoing reasons, we hereby affirm defendant's conviction and sentence.

**<u>Affirmed.</u>**