# United States Court of Appeals
## For the First Circuit

No.  05-2275

UNITED STATES OF AMERICA,
Appellee,

v.

ANDY WILLIAMS MANGUAL-GARCIA,
Defendant, Appellant.

No.  05-2414

UNITED STATES OF AMERICA,
Appellee,

v.

GILBERTO VILLANUEVA-RIVERA,
Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Howard, Circuit Judge,
Selya, Senior Circuit Judge,
and Dyk,* Circuit Judge.

September 18, 2007

Jorge  L.  Armenteros-Chervoni  for  appellant  Gilberto
Villanueva-Rivera.

*Of the Federal Circuit, sitting by designation.

Rachel Brill for appellant Andy Williams Mangual-Garcia.

Julie Mosley, Assistant United States Attorney, with whom, Rosa Emilia Rodriguez-Velez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, and Thomas F. Klumper, Assistant United States Attorney, were on brief, for the appellee.

**DYK**, **Circuit Judge**.  Andy Williams Mangual-Garcia ("Mangual-Garcia") and Gilberto Villanueva-Rivera ("Villanueva-Rivera") appeal from their convictions for (1) conspiracy to possess with the intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 841 and (2) possession with intent to distribute approximately five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).  Finding no reversible error, we affirm the convictions.  Additionally, although the district court's failure to articulate its reason for choosing a particular sentence within a guideline range that exceeded twenty-four months violated 18 U.S.C. § 3553(c)(1), we find no plain error that would require resentencing.

## BACKGROUND

We describe the evidence in the light most favorable to the government.  See, e.g., United States v. Sampson, 486 F.3d 13, 47 (1st Cir. 2007).  From 2000-2002, appellants Mangual-Garcia and Villanueva-Rivera, along with others, allegedly shipped cocaine from Puerto Rico to the mainland United States on commercial airline flights departing from either San Juan or Aguadilla airports. Luis Escobar-Lopez ("Escobar-Lopez"), an employee of the catering company that serviced airplanes at Puerto Rican airports and a member of the conspiracy, agreed to cooperate with law enforcement officers.  He arranged to have drugs shipped on a commercial flight leaving Aguadilla airport on December 22, 2002,

and taped conversations among the alleged conspirators, including the appellants, regarding this shipment.

On February 23, 2004, a grand jury indicted Mangual-Garcia and Villanueva-Rivera, along with Irvin Caraballo-Torres ("Caraballo-Torres") and Carlos Escobar-Rivera ("Escobar-Rivera"). During the course of a 22-day trial, the government introduced the testimony of cooperating witness Escobar-Lopez regarding the alleged conspiracy, including testimony that both Mangual-Garcia and Villanueva-Rivera were part of the December 22 conspiracy. The government also introduced tape recordings Escobar-Lopez had made with the alleged conspirators. The taped conversations, which occurred between December 10 and December 24, 2002, concerned the planning of the December 22 shipment as well as the actions of the alleged conspirators after the shipment was lost.

In addition, the government showed video recordings of Villanueva-Rivera's delivering silver or gray wrapped packages to Caraballo-Torres on December 21 and Caraballo-Torres' entering the plane on December 22. Finally, the government introduced evidence of five drug packages that it seized from the rear lavatory of the airplane on December 22. The appearance of these packages matched the appearance of the packages Villanueva-Rivera delivered on the 21st.

The jury convicted Mangual-Garcia and Villanueva-Rivera on April 14, 2005. Mangual-Garcia was sentenced to 364 months in

jail and Villanueva-Rivera to 192 months. In sentencing the defendants, the district court never explained why it chose the specific sentences within the guidelines range, other than to recite that it had considered all of the factors that it was required to consider under 18 U.S.C. § 3553(a).

Mangual-Garcia and Villanueva-Rivera timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

### I. Introduction of Evidence of a Separate Conspiracy

The appellants' principal argument on appeal is that the district court should have granted their motion for a mistrial based on the prosecutor's misconduct in introducing evidence of a separate December 8 conspiracy. It is undisputed that five of the government's eleven witnesses[1] testified about the FBI's attempt on December 8, 2002, to seize another shipment of drugs. That attempt was stymied when the alleged drug traffickers were notified of the presence of federal agents. In fact, two of the witnesses testified exclusively about the December 8 events. In the course of the trial, the government admitted that the events of December 8 involved a different conspiracy, to which the appellants were not

---

[1] At points in their briefs, both the government and Mangual-Garcia assert that six government witnesses testified about the December 8 events. However, they then only list five witnesses who so testified. This error may stem from Mangual-Garcia's apparently incorrect assertion below that FBI Special Agent Amado Vega testified about the December 8 events.

-5-

parties. For present purposes, we will assume that the government did not advise the defendants of the error until April 6, 2005, during the jury charge conference after the government had rested. Then, the government clearly admitted that the December 8 events involved a "different conspiracy" that did not involve the appellants. The defendants immediately objected and filed a motion for a new trial the next day, which the district court denied.

Appellant Mangual-Garcia first argues that a mistrial should have been granted because the prosecutor's delayed disclosure regarding the separate December 8 conspiracy violated his rights under Brady v. Maryland, 373 U.S. 83 (1963), to access to exculpatory material. Mangual-Garcia argues that if the information had been disclosed earlier, he would have been able to impeach the truthfulness of Escobar-Lopez's testimony and cast reasonable doubt on the amount of drugs involved in the charged conspiracy. It is unclear how further cross-examination would have benefitted Mangual-Garcia. Mangual-Garcia's vague assertions that this evidence could have impeached the cooperating witness, without explaining why or how, is insufficient to establish that Brady material was withheld. In any event, Mangual-Garcia admits that he did not request a continuance or seek to recall any witnesses when he learned about this evidence before he presented his case-in-chief. "As a general rule, a defendant who does not request a continuance will not be heard to complain on appeal that he

suffered prejudice as a result of late-arriving discovery." United States v. Sepulveda, 15 F.3d 1161, 1178 (1st Cir. 1993); see also United States v. Osorio, 929 F.2d 753, 758 (1st Cir. 1991). Mangual-Garcia has failed to establish the "manifest abuse of discretion" required to overturn "the presider's decision to allow a criminal case to go forward, notwithstanding delayed disclosure of material relevant to impeachment of a witness." Sepulveda, 15 F.3d at 1179.[2]

Next, both appellants assert that the introduction of the December 8 evidence constituted prosecutorial misconduct that warrants a new trial. "[W]e determine the legal question of whether the prosecutor's actions constitute misconduct de novo, [and the question] of whether the alleged misconduct requires a new trial . . . for abuse of discretion." United States v. Casas, 425 F.3d 23, 39 (1st Cir. 2005).

We assume, without deciding, that the prosecutor's actions constituted misconduct. See United States v. Auch, 187 F.3d 125, 128-29 (1st Cir. 1999) (finding misconduct where a prosecutor made repeated references to an uncharged armored car robbery during the prosecution of a different armored car robbery). However, we conclude that the district court did not abuse its

---

[2] See United States v. Ingraldi, 793 F.2d 408, 411-12 (1st Cir. 1986) ("[T]he test [for delayed disclosures] is whether defendant's counsel was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case.").

discretion in determining that a new trial was not warranted. In determining whether prosecutorial misconduct "so poisoned the well" as to require a new trial, this circuit considers "(1) whether the prosecutor's misconduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether any prejudice surviving the court's instruction likely could have affected the outcome of the case."  Id. at 129.

The claimed misconduct in this case was clearly repeated. However, this is not a close case since the evidence plainly supported a conviction.  Indeed, the appellants do not argue otherwise, with one exception noted below. Most important, as part of the jury charge, the district court explicitly, clearly, and repeatedly instructed the jury

> not . . . to consider at all any testimony regarding the December 8th [events] . . . You are not to make any connection between that event . . . and the drug conspiracy charge . . . since the December 8, 2002 events are not evidence of the conspiracy charge . . . [Y]ou shall disregard all references by these witnesses to the December 8 [events].[3]

---

[3]  In full, the court instructed the jury as follows:

The only part [of the five witnesses] testimony that I am striking has to do with what they testified to about the December 8, 2002, surveillance in the Aguadilla airport, December 8, 2002.  And this is my instruction to you, Mr. Foreman and members of the jury:  During the presentation of the government's case in chief, the following agents, Task Force Agent Victor Lopez, Special Agent of the FBI, Miguel Marrero, Task Force Agent Teodoro Lebron and Special Agent of the FAA, Orlando Gonzalez, as well as cooperating witness Luis Oscar Escobar Lopez, testified about an operative [sic] that the FBI conducted on

During these instructions, the jurors were told twice that the December 8 events were not part of the charged conspiracy; twice that the testimony regarding December 8 had been stricken; and three times that they should not consider the testimony regarding December 8. We are at a loss as to how the district court, under these circumstances, could have provided stronger curative instructions.[4]

December 8, 2002 at the Rafael Hernandez airport at Aguadilla. These witnesses described this, the December 8th operative [sic], as an unsuccessful operative [sic] in which no drugs were seized. During the Court's formal charge conference with the attorneys on April 6, 2005, it came to light that the December 8, 2002, events at the Aguadilla airport were not part of the conspiracy that is charged against these defendants in Count 1 of the indictment. Given this representation by the government's counsel, you are instructed not–and I emphasize not–to consider at all any testimony regarding the December 8th, 2002, FBI operative [sic] at the Aguadilla airport. You are not to make any connection between that event, the surveillance events of December 8, 2002, and the drug conspiracy charge in Count 1 of the indictment against the four defendants, since the December 8, 2002, events are not evidence of the conspiracy charge in Count 1. This evidence was ordered stricken by the Court; therefore, you shall disregard all references by these witnesses to the December 8, 2000 [sic] surveillance at the Aguadilla airport.

[4] Mangual-Garcia objects to the fact that the district court did not instruct the jury to disregard photographs of the airport and airline taken as part of the December 8 operation. However, since the government used these same photographs, which were not specific to December 8, in describing the December 22 operation, it was proper for the district court not to instruct the jury to disregard these exhibits.

This court has repeatedly held that a strong, explicit, and thorough curative instruction to disregard improperly admitted evidence or improper comments by the prosecutor is generally sufficient to cure any prejudice from prosecutorial misconduct in that regard. See, e.g., United States v. Cormier, 468 F.3d 63, 74 (1st Cir. 2006) (finding no prejudice where "the court issued final instructions to the jury that were strong and clear on their duty to disregard the improper comments" (internal quotation marks and alterations omitted)); United States v. Boldt, 929 F.2d 35, 41 (1st Cir. 1991) (finding that "a very strong and thorough curative instruction [to disregard] . . . sufficed to dispel any prejudice from the [prosecutor's] improper comment"). This follows from the fact that "our system of trial by jury is premised on the assumption that jurors will scrupulously follow the court's instructions . . . ." United States v. Owens, 167 F.3d 739, 756 (1st Cir. 1999).

There may be some circumstances in which the improper evidence introduced by the prosecutor so overwhelms the trial as to make no instruction sufficient to cure the prejudice. However, this is not such a case. As noted earlier, the record discloses significant other evidence that could have been the basis for the jury's guilty verdict, and the December 8 evidence was not central to the government's theory of the case. In fact, there was no

specific testimony at trial that linked the appellants to the December 8 events.  We conclude that a new trial was not required.

## II.  Improper Admission of Co-Conspirator Statements

The appellants argue that the district court improperly admitted statements made by alleged co-conspirator Vélez-García in tape recorded telephone conversations with cooperating witness Escobar-Lopez.

While out-of-court statements offered to prove the truth of the matter asserted would normally be hearsay, Rule 801(d)(2)(E) explicitly excepts "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" from the definition of hearsay.

In this circuit, out-of-court statements by an alleged co-conspirator are only admissible if the district court determines that "it is more likely than not that the declarant and the defendant were members of a conspiracy . . . and that the statement was in furtherance of the conspiracy." United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977).  Such a finding is called a "Petrozziello" determination. The district court must consider "all of the evidence" in determining whether the prosecution has shown by a preponderance of the evidence that the declarant and the defendant were co-conspirators. See United States v. Murphy, 193 F.3d 1, 7 (1st Cir. 1999).  Thus, while the district court is generally required to make a conditional admissibility

determination if the defendant objects to the introduction of an out-of-court statement under Rule 801(d)(2)(E), this circuit "require[s] the court to delay its final Petrozziello determination until the close of all evidence." Earle v. Benoit, 850 F.2d 836, 841 (1st Cir. 1988); United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir. 1980). If the district court, having conditionally admitted the statements, later determines that they are inadmissible, it should strike the statements and give a curative instruction or, if no instruction would cure the prejudice, declare a mistrial. Ciampaglia, 628 F.2d at 638.

In this case, the government sought to introduce a tape recording and transcript of the conversations between Vélez-García and Escobar-Lopez at trial during the direct examination of Task Force Agent López. The defendants objected, asserting that Vélez-García's statements were inadmissible hearsay because he was acting as a government informant at the time and therefore was not a co-conspirator under United States v. Giry, 818 F.2d 120, 126 (1st Cir. 1987) ("[G]overnment agents do not count as co-conspirators . . . [T]he government informer is not a true conspirator.").

On March 7, 2005, the district court issued its preliminary admissibility ruling, concluding that "[t]he preponderance of the evidence so far leads us to conclude that Mr. Vélez-García was a 'bona fide' co-conspirator in the conspiracy charged and not an informant." In making this ruling, the district

court relied on: the allegations of the indictment that the conspiracy lasted from November 2000 to December 2002, an FBI "302 report" of an interview with Escobar-Lopez in which he said Vélez-García was a member of the conspiracy, the tape recordings themselves,[5] "the testimony up to this moment of task force agent Victor López," and an FBI certification letter that listed the dates that Vélez-García was a cooperating witness as May 16, 2000 through August 16, 2002, and February 11, 2003 through May 7, 2003. The appellants take issue with the district court's reliance on this last piece of evidence, arguing that the author of the certification letter, FBI Special Agent in Charge Luis Fraticelli, did not testify at trial and therefore was not subject to cross-examination, allegedly in violation of the appellants' Sixth Amendment right to confront the witnesses against them.

We find no error in the district court's reliance on the Fraticelli letter in making its preliminary admissibility determination. A court may consider "any evidence it wishes, unhindered by considerations of admissibility," in making preliminary admissibility determinations. Bourjaily v. United States, 483 U.S. 171, 178 (1987); see also Fed. R. Evid. 104(a). Moreover, since a district court is not required to hold a formal hearing in making this preliminary determination, as the appellants

---

[5]     While the alleged co-conspirator statements alone are insufficient to establish that the declarant and defendant were co-conspirators, they may be considered. Sepulveda, 15 F.3d at 1182.

-13-

acknowledge, no violation of the appellants' right to cross-examination occurred.  See United States v. Campbell, 268 F.3d 1, 4-5 (1st Cir. 2001).

The appellants also appear to complain that the evidence ultimately introduced at trial did not support admissibility of the statements.  Here, the district court erred in failing to make a final Petrozziello determination at the close of the evidence.  As noted earlier, "[f]or Petrozziello purposes, the critical juncture is the close of all the evidence." United States v. Ortiz, 966 F.2d 707, 715 (1st Cir. 1992).  However, although the defendants objected at the time the statements were introduced, leading to the preliminary determination, they never renewed their objection at the close of the evidence nor did they request a final Petrozziello determination.  This court has held that "a defendant's failure to object to the omission of such an express trial-end determination bars him from raising the point on appeal in the absence of plain error."  Ortiz, 966 F.2d at 715 (quoting United States v. Perkins, 926 F.2d 1271, 1283 (1st Cir. 1991)); see also Campbell, 268 F.3d at 5-6.

We find no plain error on the record of this case. Even putting to one side the out of court statements on which the district court relied in making its preliminary determination,[6] the

---

[6]    We do not have to reach the question of whether evidence not presented at trial can be considered as part of the final Petrozziello determination.

government presented significant admissible evidence at trial that Vélez-García was a co-conspirator, not a government informant, at the time of the tape recordings. FBI agent Marrero explicitly testified at trial that Vélez-García was a cooperating witness for the FBI only from May 16, 2000, until August 16, 2002, and again from February 11, 2003, until April 7, 2003. Similarly, Task Force Agent López testified during cross-examination by one of the co-defendant's counsel that while Vélez-García was a government informant at other times, he was not a government informant in December 2002 when he made statements at issue. The evidence relied on by the appellants only shows that Vélez-García was a government informant at some point in time, not that he was a government informant, and therefore not a co-conspirator, when the tape recordings were made. A new trial is not required.

### III. Villanueva-Rivera's Other Alleged Errors

#### A. Alleged <u>Napue</u> Violation

Villanueva-Rivera argues that his conviction should be reversed because the prosecution improperly allowed the cooperating witness, Escobar-Lopez, to testify falsely and then used that false testimony in its closing argument. At a sidebar conference on March 11, 2005, the government made the following explicit admissions: (1) "the government has no intention of prosecuting [Escobar-Lopez] for these charges at this time"; (2) "the government has no intention of pursuing charges . . . [because] he

-15-

cannot be prosecuted based only on his own statements"; and (3) "at this point in time, at no time has the government had any intention of prosecuting Mr. Escobar, because without his cooperation, we would not have been able to proceed with this case." However, on March 16, 2005, during cross-examination by a co-defendant's counsel as to Escobar-Lopez's motivation for cooperating, Escobar-Lopez testified to the contrary, stating that "just like the defendants here, I'm sitting here testifying without a piece of paper, and because of my testimony, I could also be put in jail." Finally, during closing arguments on April 12, 2005, the prosecutor said:

> [Escobar-Lopez] decided let me save my hide and help, and maybe I'll get something out of this for me, maybe I'll get rid of that case in Boston. But he also told you there are no promises, no promises. . . . You don't have a plea agreement, you don't have a cooperation agreement, you don't have any kind of immunity? No. No. No.

The rules governing this issue were established by the Supreme Court in Napue v. Illinois, 360 U.S. 264 (1959). There a government witness, in response to a question by the prosecutor, testified that "he had received no promise of consideration in return for his testimony." Id. at 265. The prosecutor "had in fact promised him consideration, but did nothing to correct the witness' false testimony." Id. The Supreme Court held that the prosecutor "may not knowingly use false evidence, including false testimony, to obtain a tainted conviction" regardless of whether the prosecutor "solicit[s] false evidence" or, as here, "allows

-16-

[false evidence] to go uncorrected when it appears." Id. at 269. The use of such false testimony violates the defendant's constitutional right to due process. Id. "A new trial is required if the false testimony could in any reasonable likelihood have affected the judgment of the jury." Giglio v. United States, 405 U.S. 150, 154 (1972) (internal quotation marks and alterations omitted).

We first reject Villanueva-Rivera's assertion that the prosecutor's statements during closing argument constituted a Napue violation. The prosecutor merely said "there [we]re no promises" and no plea, cooperation, or immunity agreement. Villanueva-Rivera has pointed to no evidence to the contrary.

Turning to Escobar-Lopez's testimony itself, the government argues that no Napue violation occurred because Escobar-Lopez was unaware that the government did not intend to prosecute him. We disagree. In light of the government's prior admission that "at no time has the government had any intention of prosecuting Mr. Escobar," the government clearly knew that Escobar-Lopez was not going to be put in jail for his testimony. Yet, Escobar-Lopez was permitted to testify that "because of my testimony, I could also be put in jail." Thus, the government "allow[ed] [false testimony] to go uncorrected when it appear[ed]." Napue, 360 U.S. at 269.

-17-

However, the government's admissions regarding its intent not to prosecute Escobar-Lopez occurred at a sidebar conference in the presence of the defense counsel before Escobar-Lopez made the challenged statements. Villanueva-Rivera's counsel was thus equally aware that Escobar-Lopez's testimony was false. Although there is some division within the circuits on the issue, we agree with the majority of circuits that "absent unusual circumstances, the right of the defendant to disclosure by the prosecutor is deemed waived if defense counsel with actual knowledge of the [false testimony] chooses not to present such information to the jury." United States v. Iverson, 648 F.2d 737, 739 (D.C. Cir. 1981) (opinion on rehearing) (footnote omitted).[7] When the defendant knows about the false testimony and fails to bring it to the jury or the court's attention, the assumption is that he did so for strategic reasons, and the defendant will not be allowed to

---

[7] See Beltran v. Cockrell, 294 F.3d 730, 736 (5th Cir. 2002); Ross v. Heyne, 638 F.2d 979, 986 (7th Cir. 1980); United States v. Meinster, 619 F.2d 1041, 1045 (4th Cir. 1980); see also Jenkins v. Artuz, 294 F.3d 284, 295-96 (2d Cir. 2002) (holding that Napue violation exists in such circumstances unless there is an indication that it was a "strategic or tactical omission" by defense counsel); but see Belmontes v. Brown, 414 F.3d 1094 (9th Cir. 2005) ("Whether defense counsel is aware of the falsity of the statement is beside the point. . . . [R]egardless of whether defense counsel should have known that a state witness testified falsely, a prosecutor's responsibility and duty to correct what he knows to be false and elicit the truth, requires him to act when put on notice of the real possibility of false testimony." (internal citations, quotation marks, and alterations omitted)), rev'd on other grounds sub nom. Ayers v. Belmontes, 127 S. Ct. 469 (2006).

-18-

question his own strategic choices on appeal. Beltran, 294 F.3d at 736. Nor does this case present unusual circumstances that undermine this presumption, such as when the failure to object is the result of defense counsel's conflict of interest, see Ross, 638 F.2d at 986, or when the defendant was prevented "from raising or pursuing the issue" at trial by "circumstances essentially beyond his control," see Iverson, 648 F.2d at 739. Having had knowledge that Escobar-Lopez's testimony was false at the time it occurred and having chosen not to raise this issue at the time, Villanueva-Rivera cannot now raise the issue on appeal.

### B. Improper Statements by Prosecution Witnesses

Villanueva-Rivera argues that his conviction should be reversed because prosecution witnesses made "repeated references to a larger, and very violent organization," despite the limited scope of the charged conspiracy. Since there was no defense objection to these statements on the specific basis that Villanueva-Rivera raises on appeal,[8] we review only for plain error. See United States v. Figueroa, 976 F.2d 1446, 1453 (1st Cir. 1992). All of the statements relied on by Villanueva-Rivera merely provided background information about the investigation. Almost any large

---

[8] Villanueva-Rivera did not object to any of the statements, and his co-defendants only objected to three of them. Two of these objections were for lack of foundation and speculation. The third was based on United States v. Casas, 356 F.3d 104 (1st Cir. 2004), which held that a government agent could not testify that the defendants were part of the charged drug conspiracy based on his "investigation." Id. at 119.

drug trial will have references to gangs and violent activities. Since none of the statements connected Villanueva-Rivera to this activity,[9] we find no plain error.

### IV.   Mangual-Garcia's Other Alleged Errors

### A.   Alleged Constructive Possession Errors

Mangual-Garcia argues that the district court erred in denying his Rule 29 motion for acquittal as to the second count of the indictment, charging him with possession with intent to distribute approximately five kilograms of cocaine, because there was insufficient evidence on the possession element.  We disagree.

"For purposes of the statute of conviction, 21 U.S.C. § 841(a)(1), possession may be either actual or constructive." United States v. Del Rosario, 388 F.3d 1, 8 (1st Cir. 2004), vacated on other grounds sub nom.  Pacheo v. United States, 544 U.S. 970 (2005). "Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others."  Id. at 8 (internal quotation marks omitted).  Mangual-Garcia argues that "[t]here was no evidence that Mr. Mangual-Garcia was the owner of the plane, had command of the people transporting the kilos, or any evidence from which the fact finder could find,

_____

[9]     This is not a situation like Casas, where a prosecution witness testified that the appellant was part of a drug "organization," which was part and parcel with the charged conspiracy, based on the results of his investigation.  356 F.3d at 118-20.

or at least infer, that he had the necessary power and intent to possess the cocaine." Appellant Mangual-Garcia Br. 7-8.

To the contrary, there was sufficient evidence at trial for the jury to conclude that Mangual-Garcia constructively possessed the requisite amount of drugs during the events of December 21-22. First, the record contains evidence that the drugs involved in the conspiracy were owned by Mangual-Garcia. Moreover, tape recorded conversations introduced at trial and the testimony of cooperating witness Escobar-Lopez indicated that Mangual-Garcia was going to pay the person who placed the drugs on the December 22 plane and that the courier on that plane was supposed to deliver the drugs to Mangual-Garcia in the United States. Finally, other tape recorded conversations showed Mangual-Garcia scheduling the shipment of the drugs and coordinating who would place drugs on the plane. Based on all of this evidence (as well as additional evidence introduced at trial), we conclude that the district court did not err in denying Mangual-Garcia's Rule 29 motion for acquittal on the possession charge.

Mangual-Garcia makes two other arguments related to constructive possession. First, he argues that the district court's jury instructions should have included a second sentence from Del Rosario in addition to the one quoted above in the text: "[i]n a drug case, constructive possession may be inferred from a defendant's dominion and control over an area where narcotics are

found." 388 F.3d at 8 (internal quotation marks omitted). This quote is clearly just one example of when constructive possession can be found in a drug case, and the district court did not err in refusing to include this language in the instruction.

Second, Mangual-Garcia argues that the prosecutor's rebuttal closing argument improperly analogized constructive possession to when "someone is shipping you something Fed Ex or UPS and you know it's coming to you . . . and you've got the tracking number but you haven't gotten possession of it yet."[10] Certainly, the facts of this case could be distinguished from the analogy, but we do not see how this analogy rises to the level of prosecutorial misconduct.

### B. Comments on Failure to Produce Evidence

Mangual-Garcia also alleges that the prosecutor improperly commented on his silence during the rebuttal closing

---

[10] In full, the prosecutor's argument was as follows:

Prosecutor: As to Mr. Armenteros and his argument about the constructive possession, let me kind of give you an analogy. Say someone is shipping you something Fed Ex or UPS and you know its coming to you, say it's jewelry, and you've got the tracking number but you haven't gotten possession of it yet.
Defense: Objection as to the example, it doesn't follow the law.
Court: Let her continue, I don't know what she's going to say.
Prosecutor: And it goes missing, and you call about the tracking number because you're following up on it, you're trying to find where it is, because it's yours, it belongs to you.

-22-

argument. Mangual-Garcia's attorney, during his closing argument noted that the prosecution had not provided any evidence that Mangual-Garcia was in New Jersey at the time of the charged conspiracy and noted in particular that the government had failed to provide a telephone or electric bill to show that Mangual-Garcia was in Newark. In rebuttal, the prosecutor responded that Mangual-Garcia had not provided any evidence to the contrary, stating:

> Mr. Armenteros suggested, oh, they could have brought the electric bill, they could have brought the phone bill to prove who my client was. Defendants also could have done that; they don't have to....

Mangual-Garcia objected to this statement, and the district court immediately gave a curative instruction that the defendant did not have to present evidence because he was presumed innocent and the government had to prove guilt beyond a reasonable doubt. The prosecutor then continued, saying "[a]s the Court explained, they don't have to; that doesn't mean they can't," and Mangual-Garcia objected again. The court instructed the prosecutor to "leave that subject matter because [it] w[ould] have to re-instruct the jury."

"[T]he Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin v. California, 380 U.S. 609, 615 (1965) (footnote omitted). If the prosecutor had been the first one to raise the issue by noting Mangual-Garcia's failure to produce documents showing he was not in Newark, the prosecutor's comments might be seen as a comment on the

-23-

defendant's failure to testify.  See United States v. Stroman, No. 06-2133, ___ F.3d ___, 2007 WL 2377144, at *4 (1st Cir. Aug. 22, 2007); United States v. Hershenow, 680 F.2d 847, 856 (1st Cir. 1982) (noting that documents within a defendant's personal possession are protected by the 5th Amendment).

However, the comments were only "made in rebuttal after defense counsel had [himself] raised the issue" of the government's failure to produce an electric or telephone bill.  United States v. Henderson, 320 F.3d 92, 107 (1st Cir. 2003) (emphasis omitted).  By suggesting that the prosecutor could have produced such documents, the defense attorney indicated that these documents were available to persons other than the defendant.  Under these circumstances, the "prosecutor's response was not such that the jurors would probably interpret it as commentary on the accused's failure to take the stand."  Id. (internal quotation marks omitted).  Instead, the government's comment merely suggested that, if the documents were generally available (as defense counsel had suggested), either side could have produced them -- without the defendant's taking the stand.

Under the invited reply doctrine, "the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' [and do] not warrant reversing [the] conviction."  United States v. Young, 470 U.S. 1, 12-13 (1985). In a similar context in Henderson, "defense counsel suggested that the

-24-

government was hiding something by not producing" a witness to the drug transaction, and the prosecutor responded in rebuttal by saying that the defendant could have produced this witness. 320 F.3d at 107. This court rejected the defendant's claim that this was an improper comment on his silence, concluding that "defense counsel invited a response by raising the issue" and "[t]he prosecutor's remarks were limited and addressed only the defense counsel's own comments." Id. For the same reason, a new trial is not warranted in this case.

### C. Cumulative Effect of Errors

Mangual-Garcia argues that, even if each individual error was harmless in its own right, "the total number of incidents in the case at bar have a cumulative effect that warrant a new trial." Appellant Mangual-Garcia's Br. 34; see United States v. Mooney, 315 F.3d 54, 61 (1st Cir. 2002). As described above, we find only three non-sentence-related errors in the district court proceedings: the use of the December 8 testimony, the failure to make a final Petrozziello determination, and the use of false testimony of Escobar-Lopez.

We conclude that these three errors together are insufficient to warrant the remedy of a new trial, which "is rarely used [and] is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." Id. As discussed above, we cannot say that the

-25-

"evidence preponderates heavily against the verdict" on either the conspiracy or the possession charges. We have already concluded that there was legally sufficient evidence that Mangual-Garcia possessed the requisite amount of drugs and significant evidence (aside from the December 8 events) of his involvement in the conspiracy. Nor can we say that the cumulative effect of the alleged errors, given the curative instructions that were given and the strength of the other evidence, constitutes a miscarriage of justice.

## V. Sentencing

The appellants raise two types of sentencing issues. Villanueva-Rivera argues that the district court erred in its calculation of his guideline sentencing range. Villanueva-Rivera raises two objections to the calculation of his range. He first argues that the district court erred in failing to adjust his offense level for minor participation. We find no "clear error" in the district court's refusal to give Villanueva-Rivera a minor role adjustment. See United States v. Cassiere, 4 F.3d 1006, 1026 (1st Cir. 1993). Given the evidence of Villanueva-Rivera's role described above, the district court could have reasonably concluded that his role was more than that of a minor participant. Second, Villanueva-Rivera argues that the district court's factual finding that the drug quantity involved in the conspiracy was over 50 kilograms of cocaine was erroneous. We again find no clear error,

as there was testimony that the conspiracy shipped four kilograms of cocaine to the United States every 2-3 weeks for the period of the conspiracy (November 2000 through December 2002). See United States v. Pizarro-Berrios, 448 F.3d 1, 6 (1st Cir. 2006). Although Villanueva-Rivera argues that the drug quantities belonging to alleged government informant Vélez-García should not be counted for purposes of sentencing, this issue was not raised below and we find no plain error given the lack of evidence that Vélez-García was the only member of the conspiracy to possess these drugs.[11]

Finding no error in the calculation of the Villanueva-Rivera's guideline sentencing ranges, we turn to the contention by both appellants that the district court failed adequately to explain its reasons for imposing the particular sentence within the range. Because the appellants failed to object at sentencing, we review for plain error. See United States v. Vazquez-Molina, 389

---

[11] Villanueva-Rivera also argues, and the government does not dispute, that the district court failed to state its ultimate guidelines calculation and sentencing range in open court. However, the presentence report assigned a base offense level of 36 with a two-level upward adjustment for obstruction of justice. Villanueva-Rivera objected to the upward adjustment, and the district court sustained this objection. He also objected to the base offense level and sought a downward adjustment for minor particpation, both of which the district court rejected. From this, it can be inferred that the guidelines calculation was a level 36 (with a criminal history category I), which results in a sentencing range of 188 to 235 months. See United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) (holding that a district court's sentencing reason can be inferred from the pre-sentence report and the parties' arguments); see also United States v. Scherrer, 444 F.3d 91, 94 (1st Cir. 2006) (en banc).

F.3d 54, 57 (1st Cir. 2004), vacated on other grounds, 544 U.S. 946 (2005).

Mangual-Garcia's sentencing range was 324 to 405 months, and the district court sentenced him to 364 months. Villanueva-Rivera's sentencing range was 188 to 235 months, and the district court sentenced him to 192 months. Since both of these ranges exceeded twenty-four months, "the court, at the time of sentencing, [was required to] state in open court . . . the reason for imposing a sentence at a particular point within the [Guidelines Sentencing] range." 18 U.S.C. § 3553(c)(1). In explaining why it chose the sentence it did for each defendant, the district court merely recited that it had considered the factors it was required to consider under 18 U.S.C. § 3553(a).[12] It did not "specifically identify some discrete aspect of the defendant's behavior and link

---

[12]  In sentencing Mangual-Garcia, the court recited as follows:

> The Court has considered all the applicable adjustments under the now advisory Federal Sentencing Guidelines, as well as the other sentencing factors set forth in 18 U.S. Code, Section 3553(a), that is, the nature and circumstances of the offenses, defendant's history and characteristics, the need to promote respect for the law and to provide just punishment in light of the seriousness of the offenses, deterrence, the protection of the public from further crimes of defendant, rehabilitation, and the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct.

The court made a nearly identical statement at Villanueva-Rivera's sentencing.

-28-

that aspect to the goals of sentencing" as is required under § 3553(c)(1).  Vazquez-Molina, 389 F.3d at 58.  Thus, as the government admits, "the court's statement was deficient as a matter of law."  Govt. Br. at 66.

However, we must determine whether it constituted plain error sufficient to warrant resentencing.  To vacate a sentence under plain error review, four prerequisites must be established: (1) an error occurred; (2) the error was clear and obvious; (3) the error affected the defendant's substantial rights; and (4) the error impaired the fairness, integrity, or public reputation of the judicial proceedings.  United States v. Turbides-Leonardo, 468 F.3d 34, 38 (1st Cir. 2006).

We conclude that a clear and obvious error occurred but that this error did not affect Mangual-Garcia and Villanueva-Rivera's substantial rights.  This court has addressed plain error review under United States v. Booker, 543 U.S. 220 (2005), i.e., where the district court, in a trial conducted before Booker was decided, treated the sentencing guidelines as mandatory.  In that context, this circuit has held that "[t]he burden is on the defendant to convince us on specific facts" that there is a "reasonable probability of a different sentence" in the absence of the error.  United States v. Antonakopoulos, 399 F.3d 68, 80 (1st Cir. 2005) (emphasis added).

-29-

This court has applied the same standard in reviewing a district court's failure to comply with § 3553(c), holding that a reversal under plain error review requires "a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence." United States v. Gilman, 478 F.3d 440, 447 (1st Cir. 2007) (quoting Turbides-Leonardo, 468 F.3d at 39).

The purpose of § 3553(c) is to enable appellate review of district court sentencing decisions to insure that the district court's choice of a particular sentence was reasonable. See Jimenez-Beltre, 440 F.3d at 519; see also H.R. Rep. No. 98-1030, at 60 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3243. Our sister circuits have held that a sentence may be unreasonable

> if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

United States v. Haack, 403 F.3d 997, 1004 (8th Cir. 2005); see also United States v. Smith, 440 F.3d 704, 707-08 (5th Cir. 2006). Thus, to establish a reasonable probability of a different sentence in the context of a § 3553(c)(1) error, the appellant has the burden of identifying specific facts that convince us that the district court considered a significant improper factor, failed to

consider a significant proper factor, or made a significant error in balancing the factors.

Here, Villanueva-Rivera was sentenced near the low end of the applicable range and Mangual-Garcia was sentenced near the midpoint. The appellants do not identify anything in the record suggesting that an improper factor was considered or a proper factor was not considered, nor do they identify any error in the balancing of the factors. The reasonable probability test is not satisfied by the mere assertion that the sentence could have been different if not for the error. See Antonakopoulos, 399 F.3d at 80. Instead of pointing to "specific facts" to convince us that there is a reasonable probability of a different sentence, id., the appellants seem to urge a per se rule that the failure to provide an adequate explanation under § 3553(c)(1) constitutes plain error. As noted, such a per se rule was specifically rejected in Gilman. Since the appellants have not carried their burden to identify specific facts that support a conclusion that there is a reasonable probability of a different sentence, we find no plain error and no basis for resentencing.[13]

---

[13] To the extent that Villanueva-Rivera makes a separate argument that the district court failed adequately to explain his sentence (other than his § 3553(c)(1) argument), we find no plain error for the same reasons described in the text.

## CONCLUSION

For the reasons explained above, the appellants' convictions and sentences are affirmed.

It is so ordered.