# United States Court of Appeals
## For the First Circuit

No. 07-2134

UNITED STATES OF AMERICA,

Appellee,

v.

YNOCENCIO GONZÁLEZ-CASTILLO,
a/k/a Freddy Mora, a/k/a Freddy Correa,
a/k/a Ynocencio González,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Selya, and Leval,[*]
Circuit Judges.

Raymond L. Sánchez-Maceira, on brief for appellant.
Julia M. Meconiates, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, on brief for appellee.

April 9, 2009

---

[*]  Of the Second Circuit, sitting by designation.

**TORRUELLA, Circuit Judge**.  In this sentencing appeal, appellant, Ynocencio González-Castillo ("González") -- a Dominican national who pled guilty to unlawfully entering the United States after being previously deported –- challenges the sentence imposed on him by the district court.  The only issue presented is whether the sentencing court committed plain error when it imposed a sentence based, in part, on a fact not supported by the record.  After careful consideration, we conclude that the facts presented by this appeal require that appellant's sentence be vacated and that the case be remanded for resentencing.

## I.  Background

On November 13, 2006, appellant was detained by the Border Patrol near Isabela, Puerto Rico, for a possible immigration law violation.  Appellant was suspected of being an undocumented Dominican national who had illegally disembarked a few hours earlier from a migrant vessel.  Thereafter, an investigation was conducted, during which a comparison of appellant's fingerprints identified him as being a previously convicted felon who had been removed from the United States on February 2, 2005 for the commission of an aggravated felony.  Appellant was consequently ordered detained without bail.

On February 23, 2007, the appellant pled guilty to unlawful entry into the United States after being previously deported for commission of an aggravated felony in violation of 8

-2-

U.S.C. § 1326(a)(2), (b)(2). His guideline sentencing range ("GSR") was determined to be 57 to 71 months. At the sentencing hearing the court stated that "[t]his is [appellant's] second entry into the United States without obtaining prior consent or authorization from the U.S. Attorney General" (emphasis added) and also made reference to his record of two prior drug convictions as well as one for a weapons violation. Thereafter, the court reemphasized the appellant's multiple illegal entries as an important factor in determining his sentence, stating that, "[i]n light of Defendant's prior convictions [and] his two illegal entries in a two-year period, into the United States, deterrence is the salient factor in this particular case." (emphasis added).[1] No

---

[1] The sentencing court made these statements in the context of the following recitation at the sentencing hearing:

> Before the Court is a 40-year-old Dominican national whose immigration status is that of an illegal alien. This is his second entry into the United States without obtaining prior consent or authorization from the U.S. Attorney General. He was previously deported in the year 2004 as an aggravated felon upon a drug felony conviction in the district of New York. He has a record of two prior drug convictions and a weapons conviction.
> In light of Defendant's prior convictions, his two illegal entries in a two-year period, into the United States, deterrence is the salient factor in this particular case. Therefore, the Court finds that a sentence within the applicable advisory guideline range is sufficient but not greater than necessary to meet statutory objectives of punishment and deterrence in this case.

objection was made by appellant's counsel to the court's statements regarding defendant's "two illegal entries." Additionally, neither the government attorney nor the probation officer present at the sentencing hearing indicated any disagreement with the accuracy of this factual conclusion. Appellant was ultimately sentenced to 71 months' imprisonment, the high end of the applicable GSR.

As it turns out, and as the government concedes, there is nothing in the record to support the district court's assertion that this was appellant's second illegal entry into the United States, given that nothing in the record suggests that appellant's first entry into the United States was illegal or that any subsequent illegal entries took place. The record and the Pre-Sentence Report ("PSR") indicate that, after González's first entry into the United States in 1996, "[h]e adjusted his residency in 1997, when he married." This fact establishes that, at least after 1997 and prior to his deportation in 2004, appellant was legally in the United States. That appellant held legal status during this period is confirmed by the fact that when appellant was deported on February 2, 2004, he was not deported as an illegal alien, but as a permanent resident alien who had committed an aggravated felony. Moreover, the fact that appellant was able to adjust his status legally through marriage renders it less likely that his initial entry in 1996 was illegal, as lawful entry is, in the vast majority of cases, a prerequisite for adjustment. See, e.g., 8 U.S.C.

-4-

§ 1255(a) (stating that the "status of an alien who was <u>inspected and admitted or paroled</u> into the United States . . . may be adjusted . . . to that of an alien lawfully admitted for permanent residence" (emphasis added)). At the very least, a contrary inference cannot be presumed. Finally, even if appellant's first entry into the United States in 1996 <u>were</u> illegal, a fact for which there is absolutely no support in the record, this still would not support the court's assertion at the 2007 sentencing hearing, that appellant had committed two illegal entries <u>in a two-year period</u>. The district court's error in basing appellant's sentence on these unsupportable factual assertions forms the basis of the instant appeal.

## II. <u>Discussion</u>

Because appellant's lawyer failed to object at sentencing to the district court's unsupported statement regarding his multiple illegal entries, "we review for plain error." <u>United States</u> v. <u>Manqual-García</u>, 505 F.3d 1, 15 (1st Cir. 2007).[2] For us to vacate a sentence under the plain error standard, appellant bears the burden of establishing that "(1) an error occurred; (2) the error was clear and obvious; (3) the error affected the defendant's substantial rights; and (4) the error impaired the

---

[2] Notwithstanding the failure of González's attorney to raise the error, we note that the government also contributed to the error by failing to call the matter to the attention of the sentencing court.

fairness, integrity, or public reputation of the judicial proceedings." Id.

We keep in mind that in reviewing the reasonableness of a sentence, we must first determine whether the district court committed any procedural errors. United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008). Such errors include "selecting a sentence based on clearly erroneous facts." Gall v. United States, 128 S. Ct. 586, 597 (2007).

Applying the plain error standard, we find that there is no question that an error occurred, a point that the government now concedes. Nor does the government dispute that the error was "clear and obvious," as it certainly was, given that, as explained above, the subject of the present conviction is the only instance of an illegal entry by the appellant at any time shown anywhere in the record. See Mangual-García, 505 F.3d at 15. Notably, this was a procedural error, which, under a different procedural posture, would constitute an "abuse of discretion." See United States v. Torres, 541 F.3d 48, 51 (1st Cir. 2008) (listing "selecting a sentence based on clearly erroneous facts" as among the "procedural errors amounting to an abuse of discretion" by the sentencing court).

Nevertheless, because our review is for plain error, we must proceed to the third and fourth prongs of the plain error analysis and inquire whether the sentencing court's error affected

appellant's substantial rights, and whether basing the sentence on this erroneous fact of apparent significance to the sentencing court impaired the fairness, integrity or public reputation of the judicial proceeding. We believe that the answer to both inquiries favors the appellant.

First, in terms of substantial rights, this prong of the plain error inquiry translates, in the sentencing context, into the requirement of "a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence." United States v. Perazza-Mercado, 553 F.3d 65, 78 (1st Cir. 2009) (quoting United States v. Gilman, 478 F.3d 440, 447 (1st Cir. 2007)). The government is in a tenuous position in arguing that appellant's rights were not substantially affected by the sentencing court's assumption of the unsupported fact. The nature of the error was such that the court erroneously believed that the appellant had already committed, within a two-year period, the very same crime for which he was then being sentenced, namely, illegal entry. This unsupported "fact," "two illegal entries in a two-year period," became, along with the appellant's "prior convictions," a primary reason why the court chose, in its words, to make deterrence "the salient factor" in this case. It then proceeded to impose the highest sentence possible within the applicable GSR. There is, no doubt, a reasonable probability that had the taint of

this factual error been absent, the weight behind a deterrence-driven sentence would have been substantially reduced.

Moreover, in assessing the importance attributed by the court to this unfounded "fact," we find it particularly telling that the court mentioned the "fact" twice in explaining the top-of-the-GSR, deterrence-driven sentence ultimately imposed.  There is certainly a "reasonable probability" that, but for the error, González would have received a lesser sentence.  See id. at 78.  Thus, in view of the sentencing court's explanatory statements, it would be contrary to logic to conclude that the court's factual error did not affect appellant's substantial rights.

Lastly, we believe that basing a substantial criminal sentence on a non-existent material fact threatens to compromise the fairness, integrity, or public reputation of the proceedings.  It is well-established that a criminal defendant holds "a due process right to be sentenced upon information which is not false or materially incorrect."  United States v. Pellerito, 918 F.2d 999, 1002 (1st Cir. 1990); see also Townsend v. Burke, 334 U.S. 736, 740-41 (1948).  We think that the fairness of appellant's sentence was impaired by the deprivation of this right and therefore, even under plain error review, we should exercise our discretion to afford him a new sentencing hearing.

The sentence imposed on appellant is vacated and the case is remanded for action consistent with this opinion.

**Vacated and Remanded**.