# United States Court of Appeals
## For the First Circuit

No. 09-2482

UNITED STATES,

Appellee,

v.

PETER MITRANO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Howard, Selya, and Thompson,
Circuit Judges.

Judith H. Mizner, Assistant Federal Public Defender, for
appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
John P. Kacavas, United States Attorney, was on brief, for
appellee.

September 23, 2011

**THOMPSON, <u>Circuit Judge</u>.** Peter Mitrano appeals from his conviction on charges of willful failure to pay child support, raising claims concerning the sufficiency of the evidence, the jury instructions, and the calculation of his sentence. Finding no merit in his arguments, we affirm.

## BACKGROUND

Mitrano married Virginia Kelly in the District of Columbia in 1984. They had three children, born in 1985, 1986, and 1991. The family lived together in Virginia until Mitrano and Kelly separated in 1991. They were divorced in Virginia in 1992. At the time of the divorce, a Virginia court entered a custody order granting Mitrano primary custody of the children. The children lived with him during the week and with Kelly on weekends. In 1993, Mitrano and the children moved to New Hampshire. Shortly afterwards, Kelly followed. The family lived together in the same house, although Mitrano and Kelly did not reconcile as husband and wife.

In 2000, Kelly moved out of the house and filed an action in New Hampshire seeking sole custody of the children. Around that time, Mitrano moved back to Virginia. While the custody action was pending in New Hampshire, Mitrano complied with a temporary order requiring him to pay weekly child support. Kelly obtained temporary custody of the children in early 2001. In 2002, the New Hampshire court issued a final order awarding Kelly sole custody of

the children and requiring Mitrano to pay $1,406 per week in child support, plus $300 per week toward past medical expenses. Mitrano has paid no child support since issuance of the final order.[1]

Mitrano attempted to appeal the child support order to the New Hampshire Supreme Court, but the court declined to hear the appeal. He sought and was denied review by the U.S. Supreme Court. Mitrano then filed suits and appeals in four states (New Hampshire, Vermont, Virginia, and Maryland) and in two federal courts (the District of New Hampshire and the Eastern District of Virginia). In each case he argued that the child support order was invalid because the New Hampshire court lacked subject matter jurisdiction. He lost every case and appeal.

On August 20, 2008, Mitrano was indicted for willfully failing to pay child support in violation of 18 U.S.C. § 228(a)(3). He was tried before a jury in the District of New Hampshire. At trial, Kelly testified that Mitrano worked as a patent lawyer and was a licensed engineer, that he owned two properties in Virginia (one of which generated rental income), and that he owned two Porsche automobiles and another vehicle. She also testified that before the child support order entered, Mitrano supported the family in New Hampshire, took the children on multiple vacations, and bought generous gifts (including a horse) for the children.

---

[1] In 2004, a New Hampshire court sent Kelly $14,000, which had been posted to secure Mitrano's release after he was arrested on an unrelated matter.

Another witness indicated that Mitrano rented a law office in Boston from 1998 through 2008 and regularly paid his rent (which ranged from approximately $500 to $826 per month during the ten-year period). A tenant who had lived in one of Mitrano's Virginia properties testified that he paid Mitrano $300 to $550 monthly rent in cash from 2005 to 2008. He said that other tenants rented additional rooms in the house during that time period.

The government also introduced filings from Mitrano's 2008 bankruptcy proceeding in the Eastern District of Virginia.[2] The bankruptcy filings valued one of Mitrano's unencumbered Virginia properties at $550,000 and a second Virginia property at $900,000, encumbered only by a secured claim of $156,426.87. Records introduced through a representative of the New Hampshire Department of Health and Human Services Office of Child Support showed that Mitrano owed child support in excess of $400,000 for the years 2005 through 2008.

At the close of the evidence, Mitrano moved for a judgment of acquittal under Fed. R. Crim. P. 29. The district court denied his motion. He was convicted, sentenced to serve 24 months in prison, and ordered to pay restitution in the full amount of past due child support (including interest). He filed a timely notice of appeal. Before this court, Mitrano challenges the

_____

[2] The bankruptcy petition was ultimately dismissed, in part because it had been filed in bad faith.

-4-

sufficiency of the evidence, the trial court's decision to instruct the jury on willful blindness, and the calculation of his sentence.

## SUFFICIENCY OF THE EVIDENCE

We review the denial of a Rule 29 motion for judgment of acquittal *de novo*. United States v. Perez-Melendez, 599 F.3d 31, 40 (1st Cir. 2010); see also United States v. Azubike, 564 F.3d 59, 64 (1st Cir. 2009) ("We review preserved challenges to sufficiency of the evidence de novo.").

A trial court must enter a judgment of acquittal when, viewing the evidence in the light most favorable to the verdict, it is insufficient to sustain a conviction. See Fed. R. Crim. P. 29(a). "If a reasonable jury could have found that the government had proven each element of the crime *beyond a reasonable doubt,* we will affirm the conviction." Perez-Melendez, 599 F.3d at 40 (quoting United States v. Angulo-Hernandez, 565 F.3d 2, 7 (1st Cir. 2009)). "We have described this standard of review as 'formidable,' and defendants challenging convictions for insufficiency of evidence face an uphill battle on appeal." Id. (quoting United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008)) (internal quotation marks omitted).

### Willfulness

Mitrano first contends there was insufficient evidence to support his conviction for "willfully" failing to pay child support. The willfulness standard used in 18 U.S.C. § 228 was

-5-

borrowed from the statutes criminalizing willful failure to pay taxes. United States v. Smith, 278 F.3d 33, 37 (1st Cir. 2002). Accordingly, courts should interpret willfulness in the context of child support obligations in the same way that courts have interpreted it in the context of felony tax provisions. Id. at 38. Willfulness is "a voluntary and intentional act in the context of a defendant's ability to pay." Id. (emphasis omitted). It is not a crime to fail to comply with the statute based on a good faith misunderstanding of its requirements. See Cheek v. United States, 498 U.S. 192, 200 (1991). Mere disagreement with the law, however, is not a defense. Id. at 202 n.8.

Mitrano argues that he did not willfully fail to pay child support because he had a good faith belief that the underlying child support order was invalid.[3] See United States v. Kerley, 544 F.3d 172, 177 (2d Cir. 2008) ("A defendant found to have acted willfully may negate willfulness by showing . . . that, because of a misunderstanding of the law, he had a good faith belief that he was not violating the legal duty.") (citing Cheek, 498 U.S. at 202). "A good faith belief need not be objectively reasonable to negate willfulness." Id. Mitrano stresses the

---

[3] Mitrano did not testify at trial. His belief came into evidence through Kelly's testimony. She testified that "[h]e always said he didn't have to pay, that this order is void as a matter of law, and no one agreed with him, but he always said it's void as a matter of law. He didn't say he couldn't pay. He said he doesn't have to pay."

-6-

strength of his belief, which he says shows the absence of the willfulness required under 18 U.S.C. § 228. He also argues that continuing to maintain his position in the face of its rejection by a multitude of courts is not inconsistent with holding a good faith belief, citing United States v. Booker, 543 U.S. 220 (2005), as an example of a case in which a position which previously had been rejected by many courts ultimately prevailed.

But whether Mitrano actually held a good faith belief that the child support order was invalid was a question for the jury. He was trained and had worked as an attorney, and he admits that he knew of the child support order. He even attached it as an exhibit to some of his court pleadings. Further, he was aware that numerous state and federal trial and appellate courts had rejected his theory that the New Hampshire court lacked subject matter jurisdiction to issue a valid child support order.

Given the number of courts that repudiated Mitrano's claims and appeals, we find that the jury reasonably could have refused to accept that Mitrano actually held a good faith belief that the child support order was void. See Cheek, 498 U.S. at 203-04 ("Of course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties"); United States v. Cruz-Arroyo, 461 F.3d 69, 74 (1st Cir. 2006) (jury "acted well within its proper province" by rejecting a

"somewhat fanciful claim" advanced by the defendant). The jury also could have reasonably concluded that even if Mitrano had a good faith belief that the order was void, it was only because he intentionally avoided re-evaluating his position in light of all the courts which rejected it – in other words, as we discuss later, he willfully blinded himself to his legal duty to pay child support.

The evidence, viewed in the light most favorable to the jury verdict, was more than sufficient for a reasonable jury to conclude beyond a reasonable doubt that Mitrano willfully failed to pay his child support.

## Ability to Pay

Mitrano claims the government failed to introduce sufficient evidence of his ability to pay child support. He asserts that because the government failed to introduce bank account records or tax statements showing his income and because it introduced no evidence with respect to his subsistence needs, it failed to meet its burden of proof. He notes that the jury was instructed to determine his ability to pay by considering factors including his subsistence needs, but that it heard no evidence as to the specific amounts required to pay for his housing, food, and other basic expenses. And he points to his bankruptcy filing, which he claims shows that he was deeply in debt and had been

relying on financial assistance from others. He concludes that the jury's verdict was supported by nothing more than speculation.

We have held that as an element of the crime, the government has to prove that

> at the time payment was due the [defendant] possessed sufficient funds to enable him to meet his obligation or that the lack of sufficient funds on such date was created by (or was the result of) a voluntary and intentional act without justification in view of all the financial circumstances of the [defendant].

Smith, 278 F.3d at 37. Significantly, however, the government only needs to prove that the defendant was able to pay *some* portion of his child support obligation. Id. at 40 n.5.

Evidence at trial included testimony about Mitrano's income-earning potential and assets. He was a patent lawyer and a licensed engineer. Before issuance of the custody order, he apparently had no difficulty supporting his family in a comfortable manner. The jury was entitled to infer that he retained the ability to earn substantial amounts of money after issuance of the order. After he moved back to Virginia in 2000, he had enough income to continue paying rent on office space in Boston. He also collected rental income from one of his Virginia properties. His Virginia properties together had a unencumbered net value in excess of $1 million. He owned two Porsche automobiles and another vehicle.

But Mitrano contends that in determining his ability to pay child support, we can consider only his income, not his assets.

-9-

In support of this proposition, he cites to New Hampshire's child support guidelines and cases interpreting them. See N.H. Rev. Stat. Ann. § 458-C; In re Jerome, 150 N.H. 626, 632, 843 A.2d 325, 330 (2004); In re Plaisted, 149 N.H. 522, 526, 824 A.2d 148, 151 (2003). Our determination as to whether the government met its burden of demonstrating Mitrano's ability to pay is not constrained by state law governing the calculation of the amount of child support a parent must pay. In the context of a challenge to the sufficiency of the evidence, our review is limited to whether, viewing the evidence in the light most favorable to the verdict, it supports the jury's conclusion that Mitrano had the ability to pay at least some portion of his child support obligation. See Smith, 278 F.3d at 40 n.5. We find that it does.

Thus, in light of our holdings on willfulness and Mitrano's ability to pay, the district court properly denied his motion for a judgment of acquittal.

## JURY INSTRUCTION

As we have already noted, Mitrano argued at trial that he did not willfully fail to pay his child support. To reflect this defense theory, Mitrano's counsel requested a jury instruction to the effect that if the defendant believed in good faith that he was not subject to the underlying order, even if he was mistaken, he committed no crime. The district court agreed to give the good faith instruction but stated that "the only way I can give your

good faith and lack of knowledge of law instruction is if I give willful blindness with it." So the question before us is whether the willful blindness instruction was appropriate.

Mitrano contends that because he conceded at trial that he knew about the child support order, the district court should not have instructed the jury on willful blindness. He says that such an instruction is appropriate only in cases in which a defendant intentionally avoids learning of a legal requirement. The government responds that the evidence supported the instruction because it showed that Mitrano "undertook a deliberate course of ignoring the multiple court rulings holding that the child support order against him was valid and enforceable."

"This Court has utilized both *de novo* and deferential standards of review" when reviewing claims that a court erred in providing the jury with a willful blindness instruction. Azubike, 564 F.3d at 66 n.5. The level of scrutiny may depend on the nature of the challenge. See id. We need not determine the issue in this case, because applying either standard, the evidence supported the district court's decision to charge the jury on willful blindness. See id.; United States v. Lizardo, 445 F.3d 73, 85 (1st Cir. 2006).

"A willful blindness instruction is appropriate if (1) a defendant claims a lack of knowledge, (2) the facts suggest a conscious course of deliberate ignorance, and (3) the instruction, taken as a whole, cannot be misunderstood as mandating an inference

-11-

of knowledge." Azubike, 564 F.3d at 66. "In determining whether the facts suggest the type of deliberate avoidance warranting a willful blindness instruction, 'we must consider whether the record evidence reveals flags of suspicion that, uninvestigated, suggest willful blindness.'" Id. (internal quotation marks omitted).

Mitrano challenges the first and second requirements set forth in Azubike. He contends that because he did not claim ignorance of the child support order or of the decisions rejecting his attacks on its validity, the first requirement set forth in Azubike is lacking here. His argument misses the mark. Although Mitrano admitted knowing that the child support order existed, he claimed a lack of knowledge as to its validity – in other words, he claimed not to know that it created a legal and binding obligation for him to pay child support.

Mitrano's argument with respect to the second Azubike requirement fares no better. He asserts that because there was no evidence showing that he had failed to consult current law, the facts did not suggest that he engaged in a conscious course of deliberate ignorance. Admittedly, he did not claim ignorance of the child support order, or of the decisions rejecting his position. But he did, and still does, claim ignorance of the fact that the child support order imposes on him a legally binding obligation to pay child support. Claiming not to know of the legal obligation after it had been determined in twelve decisions issued

-12-

by six different courts in four different states and two federal districts, acting over a course of more than seven years, clearly suggested that Mitrano engaged in a "conscious course of deliberate ignorance." See Azubike, 564 F.3d at 66. Accordingly, the district court properly charged the jury on willful blindness.

**SENTENCING**

Mitrano contends that the district court erroneously calculated his sentence. Specifically, he argues that there was no evidentiary basis to conclude that he could have paid the entire amount of outstanding child support, and that therefore it was plain error for the court to conclude that he willfully failed to pay the entire sum. He stresses that the jury was not asked to make a specific finding as to the amount he could have paid, and that his conviction could have been premised on his failure to meet any past due obligation that had been outstanding for more than two years. He faults the district court for relying on the total amount owed (as calculated in the Presentence Investigation Report). Ultimately, he complains that using the entire amount due as the amount he willfully failed to pay yielded an improper guideline sentencing range which influenced the judge to sentence him to the statutory maximum.

Mitrano did not object to the guidelines calculation at sentencing and therefore we review for plain error. United States v. McCoy, 508 F.3d 74, 80 (1st Cir. 2007). To vacate his sentence

-13-

under the plain error standard, Mitrano must show that "(1) an error occurred; (2) the error was clear and obvious; (3) the error affected the defendant's substantial rights; and (4) the error impaired the fairness, integrity, or public reputation of the judicial proceedings." United States v. Gonzalez-Castillo, 562 F.3d 80, 82 (1st Cir. 2009) (quoting United States v. Mangual-Garcia, 505 F.3d 1, 15 (1st Cir. 2007)). The third factor, whether the error affected the defendant's substantial rights, "translates, in the sentencing context, into the requirement of 'a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence.'" Id. at 83 (quoting United States v. Perazza-Mercado, 553 F.3d 65, 78 (1st Cir. 2009)).

The government bears the burden of proving loss by a preponderance of the evidence. United States v. Curran, 525 F.3d 74, 78 (1st Cir. 2008). In calculating the amount of loss, the district court needs to make only a reasonable estimate of the amount of loss. Id. A party "dissatisfied with the sentencing court's quantification of the amount of loss in a particular case must go a long way" to have it set aside. Id. at 79 (internal quotation marks omitted) (quoting United States v. Rostoff, 53 F.3d 398, 407 (1st Cir. 1995)).

The Sentencing Guidelines define the loss amount as "the amount of child support that the defendant willfully failed to pay." U.S.S.G. § 2J1.1 cmt n.2. As we have just described, the

-14-

evidence showed that Mitrano had sufficient income-earning potential and assets to pay his child support obligation, but that he made no payments. The district court could properly have relied on that evidence to find that the government met its burden of showing by a preponderance of the evidence that Mitrano willfully failed to pay the entire amount of overdue child support. Accordingly, it did not err by using the entire amount due to calculate Mitrano's guideline sentencing range.[4]

As for the specific calculations, the child support order required Mitrano to pay $1,406 per week, plus $300 per week toward medical expenses. The indictment covered the period from February 1, 2005 through August 20, 2008. Mitrano made no payments. The Presentence Investigation report calculated the amount of loss as $430,234.32, and the district court used that amount to calculate Mitrano's sentence of 24 months. The amount is consistent with the New Hampshire Department of Health and Human Services Office of Child Support's calculation of the amount of child support that Mitrano failed to pay.

---

[4] Mitrano's reply brief contends that the district court erred by including interest in the amount of loss used to calculate his sentence. We need not reach the issue because it made no difference in this case. Mitrano was sentenced to 24 months, the statutory maximum sentence under 18 U.S.C. § 228(c)(2), based on U.S.S.G. § 5G1.1. He has failed to show a reasonable probability that he would have received a lower sentence if interest had been excluded from the loss amount calculation. See Gonzalez-Castillo, 562 F.3d at 83.

For the reasons set forth above, we find no plain error in Mitrano's sentencing.

## CONCLUSION

We <u>affirm</u> the district court judgment.