NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**PETER PAUL MITRANO,**
*Petitioner*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent*

_____

2017-2572

_____

Petition for review of the Merit Systems Protection Board in No. DE-0752-17-0086-I-1.

_____

Decided: April 6, 2018

_____

PETER PAUL MITRANO, Fairfax, VA, pro se.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD.

_____

Before LOURIE, DYK, and TARANTO, *Circuit Judges.*

PER CURIAM.

The Department of the Air Force removed Peter Mitrano from his position as a Civil Engineer in 341st Civil Engineering Squadron at Malmstrom Air Force Base. As relevant here, there were two grounds for Mr. Mitrano's removal: (1) inability to perform assigned duties because he was disqualified from being given access to the Base under a national-security-based policy; and (2) refusal to comply with proper instructions. The Merit Systems Protection Board, on Mr. Mitrano's appeal of his removal, affirmed the two grounds and the penalty of removal. *Mitrano v. Dep't of the Air Force*, DE-0752-17-0086-I-1 (M.S.P.B. June 16, 2017) (*Decision*). We affirm.

I

The Air Force appointed Mr. Mitrano to a position as a Civil Engineer on January 11, 2016. In order to perform the duties associated with this position, Mr. Mitrano needed to obtain a secret security clearance and have access to the Base—a facility whose "mission involv[es] nuclear weaponry." *Decision* at 5 n.4; *see also id.* at 2. On January 15, 2016, as part of the process for obtaining the necessary security clearance, the Air Force sent an email to Mr. Mitrano (at the email address he used during the hiring process), instructing him to submit the required Standard Form 86 (SF-86). Six days later Mr. Mitrano submitted an SF-86 form, which, among other things, listed as his email address the address the Air Force had used on January 15.

The Air Force reacted to the submission in two ways. First, it quickly decided to reject the SF-86 as deficient, and in a January 26 email addressed to Mr. Mitrano at the same email address, it so stated and directed him to resubmit his SF-86, this time filled out fully and accurately. The day before, Mr. Mitrano was told the same thing orally by Joe Bradley, the Chief of Project Management for the 341st Civil Engineering Squadron, according to

Mr. Bradley's testimony here (which Mr. Mitrano disputed but the Board credited).

Second, based on the information contained in the incomplete SF-86 that Mr. Mitrano had submitted, the Air Force determined that he had been imprisoned for over twelve months. On that basis, it determined that not only would he likely be denied the required security clearance but, what is key here, that he was disqualified from being given access to the Base under the rules set out in the Integrated Defense Plan for the Base. Late in the afternoon on January 25, 2016, Mr. Mitrano was given a memorandum placing him on administrative leave indefinitely and providing him the opportunity to respond to the initial determination to deny him access to the Base. After Mr. Mitrano responded, the Air Force made its denial of access final on April 25, 2016.

The Air Force then proposed to remove Mr. Mitrano from his position. The operative July 2016 proposal stated two grounds of relevance here: (1) inability to perform assigned duties given the denial of Base access; and (2) refusal to comply with proper orders, namely, the orders to resubmit the SF-86 in completed form.[1] Mr. Mitrano replied several times in August 2016. In late August, the Air Force's deciding official, having received additional information, supplied the information to Mr. Mitrano and invited him to respond, which he did. On October 21, 2016, after a further communication from the deciding official and a further response from Mr. Mitrano, the deciding official sustained the grounds for removal and decided that removal was the appropriate penalty, effective a few days later.

---

[1]    The proposal stated one other ground for removal, but the Air Force dropped that ground in the proceedings before the Board. It is not further mentioned here.

Mr. Mitrano appealed the decision to the Board. The assigned Administrative Judge rendered a decision upholding the removal on June 16, 2017. *Decision* at 1. When Mr. Mitrano did not seek full Board review in the allowed time, the *Decision* became the Board's decision. Accordingly, we use "Board" in describing the *Decision*.

The Board upheld the ground of inability to perform assigned duties because Mr. Mitrano lacked access to the Base, a necessary condition of the job. It observed that it was undisputed both that Mr. Mitrano had been denied access to the Base and that his duties required him to have access to the Base. *Decision* at 8, 10. As to the access denial, all that the Board could review was whether Mr. Mitrano "was afforded minimum due process in being barred from the base (*i.e.*, he was told of the reason for being barred and given an opportunity to respond)" and whether there were "substantive rules" that the Air Force "did not follow in barring" him from the Base. *Id.* at 9. The Board concluded that Mr. Mitrano had been afforded due process and that the Air Force followed its substantive rules—specifically, the Integrated Defense Plan—in denying him access to the Base. *Id.* at 11. Although Mr. Mitrano contended that the Air Force erred in refusing to credit his argument about the wrongfulness of the criminal conviction and imprisonment that gave rise to the access denial, the Board concluded that it had no authority to question the conviction and sentence, which had been affirmed on appeal to the First Circuit. *Id.* (citing *United States v. Mitrano*, 658 F.3d 117 (1st Cir. 2011)).

The Board also upheld the ground of Mr. Mitrano's failure to follow instructions to resubmit the SF-86 to address various deficiencies. Mr. Mitrano presented essentially a factual dispute over whether he had been so instructed, contending that he never received any such instruction, because he did not receive the January 26, 2016 email and he never had the January 25, 2016 con-

versation with Mr. Bradley. The Board found that the Air Force had proven otherwise by a preponderance of the evidence. *Id.* at 12. The Board explained that the Air Force sent the January 26, 2016 email to the email address at which Mr. Mitrano received the original request to complete the SF-86 (and he then submitted his initial SF-86) and that he "consistently used before." *Id.* It also found that, whereas a subsequent email was returned as not delivered, the January 26 email was not. *Id.* at 12–13. And the Board credited Mr. Bradley's testimony that he instructed Mr. Mitrano to resubmit the SF-86 on January 25, 2016. *Id.* at 13–14.

The Board went on to reject Mr. Mitrano's affirmative defenses as unproven. *Id.* at 14–16. And it concluded by finding the required connection between the sustained charges and the removal. *Id.* at 16 (finding "there is no doubt that [a] nexus exists between the sustained charges and imposing discipline. This is so because: 1) since the appellant cannot enter the [Base], he cannot accomplish his duties: and 2) there is an obvious government interest in disciplining an employee who fails to follow an instruction."). The Board found that the Air Force considered mitigating factors and acted "clearly within the tolerable limits of reasonableness" in removing Mr. Mitrano. *Id.*

The Board's Initial Decision became final on July 21, 2017. *Decision* at 17. Mr. Mitrano timely sought review in this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

This court must affirm the decision of the Board unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "obtained without procedures required by law, rule, or regulation having been followed"; or "unsupported by substantial evidence." *See* 5 U.S.C. § 7703(c). When we review factual challenges, we do not "re-weigh conflicting evidence," but ask only

if the Board's findings are supported by substantial evidence. *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

Mr. Mitrano asserts that he was entitled to a hearing under 5 U.S.C. § 7532(c)(3) and a decision by the head of the relevant agency before he was removed from his position. Pet'r Br. 5. But Section 7532, which provides for removal without Board review, is not the only provision under which an employee may be removed for reasons relating in some way to national security. An agency may follow the normal removal path under 5 U.S.C. § 7513 instead, with its different mix of benefits and burdens, including Board review, in which case Section 7532 is inapplicable. *See Biggers v. Dep't of the Navy*, 745 F.3d 1360, 1363 (Fed. Cir. 2014); *see also Dep't of the Navy v. Egan*, 484 U.S. 518, 522–26, 532–34 (1988). Here, the Air Force followed the Section 7513 path. Mr. Mitrano therefore has no basis for invoking Section 7532.[2]

To the extent that Mr. Mitrano challenges the denial of Base access as the premise for the Board's finding that he was unable to perform assigned duties, there is no merit to his challenge. As a substantive matter, the Air Force decision straightforwardly followed a provision of the Integrated Defense Plan stating that access to the Base will be denied to a person who has been "incarcerated for 12 months or longer within the past 10 years, regardless of offense/violation, unless released on proof of innocence." Resp. Appx 39–40. That provision fits Mr. Mitrano's situation, and he has not identified any substantive rule that the Air Force violated in denying him access. He also received notice and an opportunity to respond to the proposed denial of access. In these circum-

---

[2]    Department of Defense Personnel Security Program Regulation DoD 5200.2-R, invoked by Mr. Mitrano, is inapplicable to the removal decision here.

stances, the Board properly left undisturbed the denial of Base access on which the first ground of removal rested. *Decision* at 8–9; *see also Egan*, 484 U.S. at 527–31 (limiting bases for Board review of Executive Branch security-clearance decisions, even when job status hinges on such decisions); *Kaplan v. Conyers*, 733 F.3d 1148, 1151, 1155, 1160 (Fed. Cir. 2013) (en banc) (applying *Egan* to a determination of eligibility of employee to hold a "sensitive" position).

In this court, as before the Board, Mr. Mitrano provides no basis to question the premise that access to the Base was an essential requirement of his job. He does, as he did before the Board, challenge the soundness of his criminal conviction (with resulting imprisonment of more than 12 months), which was the premise for applying the Integrated Defense Plan's provision for denying access to the Base. Pet'r Br. 16, 20 ("The issue for this Court to decide is whether or not Mitrano's conviction is void as a matter of law."). But a sufficient answer is that nothing in any grant of jurisdiction to this court gives us, any more than any grant to the Board gives it, authority to question the conviction and sentence entered by a United States District Court in New Hampshire and affirmed by the First Circuit. *See* 28 U.S.C. § 1295 (principal grants of jurisdiction to this court).[3]

Mr. Mitrano's challenge to the Board's upholding of the other ground for his removal—failure to follow orders—likewise lacks merit. He asserts that the Board erred in crediting Mr. Bradley's testimony about the

---

[3] In a related vein, Mr. Mitrano asserts that this court should review the disbarment decision of the District of Columbia Court of Appeals, *In re Mitrano*, 952 A.2d 901 (D.C. 2008). Pet'r Br. 15–16; Reply Br. 2–6. That decision has no apparent bearing on the removal at issue here. Moreover, we lack any authority to review it.

existence and content of a conversation with Mr. Mitrano on January 25, 2016.  He argues specifically that, while Mr. Bradley said in this matter (in March 2017) that the conversation occurred between 8 AM and 12 PM, Mr. Bradley said in an unemployment-compensation proceeding (in May 2017) that the conversation occurred around 8 AM.  Pet'r Br. 4, 27–29.  But this asserted disparity, which is not even a facial inconsistency, is not remotely enough to undermine the Board's finding that Mr. Bradley was credible or the Board's decision to credit his testimony, specifically as to the instructions about resubmitting the SF-86.  *Decision* at 13–14.  Mr. Mitrano has not supplied a basis for overcoming our broad deference to credibility determinations by fact finders who have seen witnesses firsthand.  *See Pope v. United States Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997); *see also Bieber*, 287 F.3d at 1364.

In any event, the Board also found that the same instruction to resubmit the SF-86 was received by Mr. Mitrano in the email sent to him on January 26, 2016. *Decision* at 12–13.  That finding is sufficiently supported by the evidence recited by the Board, which we noted above.  The finding about the email supports this ground of removal independently of the January 25, 2016 conversation between Mr. Bradley and Mr. Mitrano.

In his reply brief in this court, Mr. Mitrano makes several additional arguments regarding the Board decision in this matter.  They come too late.  A reply brief may not introduce new contentions.  In any event, we see no merit in these contentions as grounds for disturbing the Board's decision here.

Finally, Mr. Mitrano presents several contentions not particularly tied to the Board decision in this case.  We find no merit to these contentions either.  We see no due process violation in applying our own standard rules setting length limits on the briefs Mr. Mitrano could file.

*See, e.g.*, *May v. Shinseki*, 544 F. App'x 1002, 1005 (Fed. Cir. 2013).  There is no statutory violation in the absence of a quorum at the Board and no basis in the absence of a quorum for this court to conduct de novo review in this matter: the statutory standard of review in 5 U.S.C. § 7703(c), does not change where, as here, an Administrative Judge's decision becomes the final Board's decision under the governing regulations, 5 C.F.R. § 1201.113. And Mr. Mitrano has not identified any violation by the Board of its regulations regarding the provision of transcripts when requested, 5 C.F.R. § 1201.53.

## III

For the foregoing reasons, we affirm the Board's decision.

No costs.

## AFFIRMED